UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRUCE TERRELL DAVIS, JR.,

    Plaintiff,

    v.                            Case No. 19-cv-1490-bhl

SUSAN PETERS, et al.,

    Defendants.

---

## DECISION AND ORDER

Plaintiff Bruce Terrell Davis, Jr., who is serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated. Davis is proceeding on claims arising under the Eighth Amendment based on his allegations that Defendants were deliberately indifferent to his chronic back pain. On October 30, 2020, Defendant Susan Peters moved for summary judgment. Dkt. No. 45. That same day, Defendants Cassandra Baier, Daniel LaVoie, Jean Lutsey, Hannah Utter, and David Wisniewski (who are represented by separate counsel) also moved for summary judgment. Dkt. No. 50. Defendants' motions will be granted and the case will be dismissed.

### PRELIMINARY MATTERS

Among the claims that the Court allowed Davis to proceed on is a deliberate indifference claim against Lutsey, Utter, Baier, and LaVoie, as members of the Special Needs Committee, based on allegations that they denied his request for an extra mattress. On summary judgment, Davis appears to have abandoned this claim. Davis' summary judgment response materials address the proposed facts and legal arguments set forth by Peters and Wisniewski, but he did not

respond to any facts or legal arguments regarding his claim against Lutsey, Utter, Baier, and LaVoie. *See* Dkt. Nos. 60, 61. Accordingly, the Court will deem the material facts regarding Davis' claim against Lutsey, Utter, Baier, and LaVoie admitted, *see* Civil L.R. 56(b)(4), and will grant Lutsey, Utter, Baier, and LaVoie's motion for summary judgment based on Davis' failure to oppose the motion, *see* Civil L.R. 7(d).

## BACKGROUND

Davis has been diagnosed with degenerative back conditions, which cause chronic lower back pain. Dkt. No. 59 at ¶4. He has been confined at Green Bay since June 2017. Dkt. No. 47 at ¶1. Peters, who is a nurse practitioner at Green Bay, examined Davis when he arrived at the institution. Dkt. No. 59 at ¶7. Peters discontinued his prescription for Gabapentin, which is a nerve pain medication, after Davis told her he had stopped taking it because it was not helping. *Id.* at ¶¶9, 29. About a month later, Davis requested that the Gabapentin be reinstated; he also requested narcotics. *Id.* at ¶11. Davis was prescribed 200mg of Gabapentin twice daily. *See id.* at ¶13.

About ten months later, in May 2018, Davis twice requested that he receive Gabapentin four times daily. Dkt. No. 47 at ¶¶12, 14. According to Davis' medical records, at the time of his requests, his gait was normal and he was able to perform his normal daily living activities without difficulty. *Id.* at ¶12. Between May and August 2018, Davis was examined at least three times and, although he complained of being in pain, he was observed to have a normal gait, his active range of motion was unimpacted, he was in no acute distress, and he was able to position himself on the exam table. *Id.* at ¶15; Dkt. No. 59 at ¶14.

On October 1, 2018, Peters evaluated Davis and discussed a plan of care with him, which included medication, physical therapy, and the provision of a TENS unit. Dkt. No. 47 at ¶¶18-20.

2

Davis asserts that he never received physical therapy while at Green Bay. Dkt. No. 59 at ¶18. Peters referred Davis to Dr. John Joseph (who is not a Defendant) at Integrative Pain Management, where he was seen on November 12, 2018. Dkt. No. 47 at ¶22.

In his notes, Dr. Joseph stated that Davis "feels the combination of gabapentin and naproxen is helping to relieve the pain by about 50% in the past 24 hours." Dkt. No. 47 at ¶24. Dr. Joseph recommended "an increase in Gabapentin to 300 mg daily and bilateral (B/L) L4-L5 and L5-S1 facet joint injections." Dkt. No. 52 at ¶8. At the time, Davis was prescribed 300mg of Gabapentin twice daily, 10mg of Lisinopril daily, and 500mg of Naproxen twice daily. Dkt. No. 47 at ¶30. It is not clear if Davis was regularly taking his Naproxen, which is a non-steroidal anti-inflammatory drug, but he received a refill of 60 tablets on November 8, 2018. Dkt. No. 59 at ¶30. On December 17, 2018, Davis' prescription was increased to 300mg of Gabapentin three times daily, instead of only twice daily. Dkt. No. 47 at ¶39. Davis was again referred to Integrative Pain Management, where he was seen on January 2, 2019. Dkt. No. 52 at ¶¶11-12. The evaluation report noted lower back pain and recommended an increase in Gabapentin to 1200mg daily. *Id.* at ¶15. The report did not mention injections. *Id.* at ¶16.

On January 3 and 6, 2019, Davis was caught "mouthing" his Gabapentin and was issued a conduct report for misusing medication. Dkt. No. 52 at ¶19. As a result, Davis' order for Gabapentin was discontinued. *Id.* at ¶20. On April 30, 2019, an advanced care provider prescribed Duloxetine and Naproxen for Davis' back pain. Dkt. No. 52 at ¶22. The provider did not mention injections, but referred Davis back to Integrative Pain Management for injections. *Id.* at ¶23.

Davis' appointment was on June 25, 2019. Dkt. No. 52 at ¶24. Officer Wisniewski escorted Davis to the appointment. *Id.* at ¶26. Wisniewski did not know the specifics of Davis' medical condition, and Davis did not tell Wisniewski that he needed or wanted injections. *Id.* at ¶29.

Wisniewski received an envelope with "consultation" written on the outside; Wisniewski did not look at the documents inside the envelope. *Id.* at ¶¶35-38.

At the appointment, the nurse told Davis that the doctor may want to complete a medical procedure. Dkt. No. 52 at ¶40. According to Wisniewski, he told the nurse that the envelope said "consultation," and he suggested she call health services to confirm if Davis was there for a consultation or procedure. *Id.* at ¶¶41, 43. Shortly thereafter, the Dr. Joseph entered the room, said he would not complete any procedures that day, and then asked Davis some more questions. *Id.* at ¶46.

Davis asserts that, while Dr. Joseph was explaining the injection process, Wisniewski "interfered" and "caus[ed] him to discontinue Davis['] injection." Dkt. No. 61 at ¶42. According to Dr. Joseph, he does not remember and his notes do not reflect him wanting to provide Davis with an injection on June 25. *Id.* at ¶49. Dr. Joseph also does not remember and his notes do not reflect an officer interrupting him or stopping him from giving Davis an injection. *Id.* at ¶52. Dr. Joseph points out that he had not recommended an injection at Davis' prior visit. *Id.* at ¶52. According to Dr. Joseph, had an officer interrupted his administration of an injection, he simply would have called health services to verify the purpose of the visit. *Id.* at ¶53. Davis did not say anything to Dr. Joseph about receiving an injection that day. *Id.* at ¶54; Dkt. No. 61 at ¶51.

In the offsite report form, Dr. Joseph recommended discontinuing the injections. Dkt. No. 52 at ¶57. Davis suggests this means that Dr. Joseph decided not to give him an injection at the appointment because of Wisniewski's interference. Dkt. No. 61 at ¶54. Health services received Dr. Joseph's dictation from the appointment about month later. Dkt. No. 52 at ¶58. The dictation recommended scheduling an injection. *Id.* at ¶60. Health services sought clarification on the

4

contradiction, and after being seen by a new provider who recommended a branch block instead of an injection, Davis received a branch block on January 3, 2020. *Id.* at ¶¶61-64.

Davis states that, although the recommended injections were delayed, his pain was adequately managed with medication. Dkt. No. 59 at ¶32.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES

Wisniewski argues that the Court need not reach the merits of Davis' claim against him because Davis failed to exhaust his administrative remedies with regard to that claim before he filed his lawsuit. The Prison Litigation Reform Act, which applies to this case because Davis was

5

a prisoner when he filed his complaint, provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(1); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). The Seventh Circuit has explained that a prisoner cannot file a federal lawsuit until he has "take[n] all steps prescribed by the prison's grievance system" *and* "until exhaustion has been completed." *Ford v. Johnson*, 362 F.3d 395, 397-98 (7th Cir. 2004) (finding that a plaintiff who initiated his lawsuit after he appealed but before the review board issued its decision failed to exhaust the administrative remedies).

The parties agree that Davis took all the steps prescribed by the grievance system—he filed an inmate complaint and appealed the dismissal of his inmate complaint. Dkt. No. 52 at ¶¶82-86. They *also* agree that Davis filed his lawsuit before exhaustion was completed. Although Davis appealed the dismissal of his inmate complaint, he filed this lawsuit eighteen days *before* the office of the secretary dismissed Davis' appeal. *Id.* at ¶¶86-89; Dkt. No. 61 at ¶¶63-72. Because Davis filed his lawsuit before his appeal was dismissed, he failed to complete the exhaustion process before suing, and his claim must be dismissed. *Ford*, 362 F.3d at 398 ("[I]t is essential to keep the courthouse doors closed until those efforts have run their course.")

Still, the Court will address the merits of Davis' claim against Wisniewski. As the Seventh Circuit has acknowledged, in the interests of judicial economy and finality, it sometimes makes sense to address the merits of a claim even after deciding that a prisoner failed to exhaust his administrative remedies before filing his lawsuit. *See Fluker v. County of Kankakee*, 741 F.3d 787, 792-93 (7th Cir. 2013). Wisniewski's summary judgment motion fully briefs the merits of Davis' claim against him, and Davis had a full and fair opportunity to respond to the substance of the motion. Further, a dismissal based on a failure to exhaust is without prejudice, which means

6

Davis could immediately refile his claim against Wisniewski given that his appeal has been dismissed and the grievance process has run its course. It would be a waste of time and resources for Davis to initiate a new lawsuit only to eventually get to the same place the parties' and Court currently find themselves.

## ANALYSIS

Davis asserts that Peters demonstrated deliberate indifference to his lower back pain when she disregarded Dr. Joseph's recommendation for injections. He also asserts that Wisniewski demonstrated deliberate indifference when he stopped Dr. Joseph from administering an injection. The Eighth Amendment prohibits medical staff from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual was deliberately indifferent to that condition." *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017) (quoting *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016)).

For purposes of summary judgment, the parties agree that Davis' chronic lower back pain satisfies the objective prong of the standard. Thus, the only issue before the Court is whether a jury could reasonably conclude that Peters and Wisniewski were deliberately indifferent to Davis' pain. The Court finds that no jury could reasonably reach such a conclusion.

**A. Peters Is Entitled to Summary Judgment.**

Davis' claim against Peters is based on his allegation that she delayed referring him for injections despite Dr. Joseph's recommendation that he receive injections. Davis saw Dr. Joseph on November 12, 2018. Dr. Joseph's notes indicate that Davis represented that Gabapentin and

7

Naproxen were helping to relieve his pain by about 50%. Dr. Joseph recommended an increase in Davis' Gabapentin dosage and injections. Peters increased Davis' Gabapentin dosage from 600mg daily to 900mg daily, but she did not refer Davis for an injection.

No reasonable jury could conclude that Peters was deliberately indifferent to Davis' lower back pain because she initially opted to pursue only an increase in medication rather than an increase in medication *and* injections. As the Seventh Circuit has explained, "evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (emphasis in original). Davis represented to Dr. Joseph that his current dosage was providing some relief, so Peters' decision to see if an increased dosage would provide complete relief cannot be said to have been "so inadequate that it demonstrated an absence of professional judgment, that is, no minimally competent professional would have so responded under those circumstances." *Id*. (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). In fact, it appears that Dr. Joseph later endorsed this approach. A month after Peters increased Davis' dosage, he was again referred to see Dr. Joseph. Following that visit, Dr. Joseph recommended an increase in Gabapentin from 900mg daily to 1200mg daily. Dr. Joseph's recommendation did *not* mention injections, suggesting that he too thought medication alone might be sufficient to address Davis' pain.

Further, it is a "basic proposition" that plaintiffs "su[ing] for damages under § 1983 and alleg[ing] a constitutional tort (an Eighth Amendment violation)" must "develop evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). Dr. Joseph recommended an injection to address Davis' complaints of pain, not to address his underlying chronic conditions. Thus, to establish a recoverable injury, Davis must set forth evidence showing that Peters' decision
8

to manage his pain with medication rather than with medication *and* an injection exacerbated or prolonged his pain. Davis presents no such evidence. To the contrary, Davis testified at his deposition that throughout his time at Green Bay his pain had been adequately managed with medication and exercise. Dkt. No. 44 at 55:17-21. Davis' preference that his pain be managed with medication and an injection rather than with medication alone is an insufficient basis for liability. *See Mansoori v. Moats*, 827 F. App'x 595, 598 (7th Cir. 2020) (explaining that plaintiff "was not entitled to his preferred treatment, only to adequate care").

Finally, Davis makes much of the fact that Peters may have violated policy when she initialed Dr. Joseph's recommendation but did not refer him for injections. But the Seventh Circuit has long held that "violation of a state policy by itself does not give rise to a constitutional claim." *Harris v. Manlove*, 799 F. A'ppx 423, 426 (7th Cir. 2020) (citing *Tucker v. City of Chi.*, 907 F.3d 487, 494 (7th Cir. 2018). Peters is entitled to summary judgment.

### B. Wisniewski Is Entitled to Summary Judgment.

Davis alleges that Wisniewski, who escorted Davis from the prison to his offsite appointment with Dr. Joseph, demonstrated deliberate indifference when he prevented Dr. Joseph from administering an injection. Based on the record, no jury could reasonably reach that conclusion. Davis concedes that he never told Wisniewski or Dr. Joseph that he expected or wanted an injection at the appointment. Dr. Joseph asserts that he does not recall wanting to give Davis an injection and his notes do not reflect that he intended to give him an injection. And, the envelope that was given to Wisniewski had only the word "consultation" written on it, suggesting that health services did not anticipate that an injection (or other procedure) would occur that day. Thus, Davis fails to present evidence from which a jury could reasonably conclude that an injection

9

was supposed to be administered that day. Wisniewski cannot be liable for interfering with an injection that was not going to happen.

Further, Wisniewski explains that he had no authority to prevent Dr. Joseph from administering an injection. Dr. Joseph agrees, noting that, had an officer raised a concern about an intended procedure, he would have called health services to clarify the purpose of the visit. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996). It was Dr. Joseph's decision whether to give Davis an injection, and Wisniewski cannot be held liable for Dr. Joseph's decision not to do so. Davis disputes Dr. Joseph's assertions and insists that he is conspiring with Wisniewski to help him prevail, but Davis provides no evidence to support his accusations. Wisniewski is entitled to summary judgment.

## CONCLUSION

For these reasons, Defendants' motions for summary judgment (Dkt. Nos. 45, 50) are **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of January, 2021.

s/ *Brett H. Ludwig*
Brett H. Ludwig
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.